UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANKENMUTH FUNDRAISING
CORPORATION,

        Plaintiff,

                                                  Case Number 06-10825-BC
v.                                          Honorable Thomas L. Ludington

SCHWAN'S HOME SERVICE, INC.,

        Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Frankenmuth Fundraising Corporation is a fundraising company with a particular focus on student fundraising. Defendant Schwan's makes home delivery frozen food products. Plaintiff has filed a second amended complaint against Defendant alleging breach of contract, misappropriation of trade secrets, breach of fiduciary duty, and fraud. Defendant has now moved for summary judgment under Federal Rule of Civil Procedure 56(c).

In 2003, Defendant sought to benefit from Defendant's fundraising expertise. According to Plaintiff, it began processing Defendant's fundraising orders that year pursuant to an oral agreement between the parties. They executed a marketing services agreement on October 27, 2004 for Defendant to pay Plaintiff to provide Defendant with marketing services.

The parties defined deliverables and confidential information as follows:

1.5    "Deliverables" will mean the (i) the marketing programs that are delivered to [Defendant] under this Agreement or that are developed by [Plaintiff] or any [Plaintiff] employee, agent or subcontractor in the course of providing services under this Agreement, (ii) artwork, designs, written materials and other works of authorship that are delivered to [Defendant] under this Agreement or that are authored or created by [Plaintiff] or any [Plaintiff] employee, agent or subcontractor in the course of providing services under this Agreement, and (iii) all tangible material that is delivered to [Defendant] under this Agreement or that is developed or created by

[Plaintiff] or any [Plaintiff] employee, agent or subcontractor in the course of providing services under this Agreement.

1.6    "Confidential Information" will mean the information that is (i) disclosed by either party in any tangible form and clearly labeled or marked as confidential, proprietary or its equivalent, (ii) disclosed by either party orally or visually, and designated confidential, proprietary or its equivalent at the time of its disclosure and reduced to writing and clearly marked or labeled as confidential, proprietary or its equivalent within thirty (30) days of disclosure, (iii) disclosed by [Defendant], to which [Plaintiff] has access, that [Plaintiff] knows or should reasonably be expected to know is confidential to [Defendant], and (iv) disclosed by [Plaintiff], to which [Defendant] has access, that [Defendant] knows or should reasonably be expected to know is confidential to [Plaintiff].

Regarding intellectual property, the marketing services agreement also provided:

7.1    Each party hereby acknowledges that, except as expressly provided in this Agreement, it does not have, and will not acquire, any interest in any of the other party's products, technology or intellectual property rights as a result of this Agreement or the performance of any obligations hereunder.

7.2    [Plaintiff] hereby assigns all right, title and interest in all Deliverables. [Plaintiff] will retain all right, title and interest in any business systems owned by [Plaintiff] prior to the effective date of this Agreement, provided that, [Plaintiff] will not incorporate any such systems in any Deliverables.  [Plaintiff] will obtain from its employees, agents and subcontractors the rights necessary to give effect to the foregoing assignment.  At [Defendant's] request at any time during or after the term of this Agreement, [Plaintiff] will execute any additional documentation reasonably requested by [Plaintiff] to give effect to such assignment.

Regarding confidentiality, the marketing services agreement provided:

8.1    A party receiving Confidential Information will restrict the use of the Confidential Information to those purposes necessary for the performance of the receiving party's obligations under this Agreement, and, during the term of this Agreement and thereafter, will safeguard against disclosure of the Confidential Information to third parties using the same degree of care to prevent disclosure as it uses to protect its own information of like importance, but at least reasonable care. A party may make only the minimum number of copies of any Confidential Information required to carry out the purpose of this Agreement.  All proprietary and copyright notices in the original must be affixed to copies or partial copies.

8.2    Neither party will be obligated to maintain any information in confidence or refrain from use if, (i) the information was in the receiving party's possession or was

> known to it prior to its receipt from the disclosing party, (ii) the information is independently developed by the receiving party without the utilization of Confidential Information of the disclosing party, (iii) the information is or becomes public knowledge without fault of the receiving party, (iv) the information is or becomes available on an unrestricted basis to the receiving party from a source other than the disclosing party, (v) the information becomes available on an unrestricted basis to a third party from the disclosing party or from someone acting under its control, or (vi) the information is publicly disclosed (i.e. not under adequate protective order) by the receiving party under an order of a court or government agency, provided that the receiving party provides prior written notification to the disclosing party of such obligation and the opportunity to oppose such order.

Paragraph 6 of the marketing services agreement barred consequential damages, but that provision included an exception for any breach of confidentiality. The contract concluded with a choice of law provision for Minnesota law.

The parties agreed that Plaintiff would provide promotional materials and order forms for Defendant, receive and enter orders for Defendant's products, and report that order information to Defendant. Defendant would deliver orders for its own products, and Defendant represented in ¶ 4.3 that it had the facilities, equipment, and personnel to timely meet its obligations. Plaintiff contends that Defendant's inability to timely deliver products antagonized and alienated Plaintiff's customers and required Plaintiff to hire additional staff to address customer concerns.

Although the agreement terminated on December 31, 2005, the agreement sets out in ¶ 9.3 that some obligations, such as those to existing sales programs, would survive the termination of the agreement. According to Plaintiff, Defendant continued to receive fundraising contracts due to Plaintiff's pre-termination efforts after the marketing services agreement ended.

Plaintiff further alleges that Defendant misappropriated its trade secrets, which do not include "deliverables" under the marketing services agreement. According to Plaintiff, those trade secrets included financial information, marketing strategy, processing technology, and customer

relations approaches and information, to the extent not publicly available. In an affidavit, Plaintiff's chief executive officer (CEO), Stuart Michael Keyes, stated that some of its trade secrets were intangible material provided to Defendant only in the context of the purported joint venture. He maintains that the parties had an understanding that the material would remain confidential and was not provided pursuant to the marketing services agreement. He further acknowledged that Defendant paid any amounts due under the marketing services agreement and that Plaintiff sought damages for loss of reputation and loss of future business, in the event that schools had bad experiences due to Defendant's delivery problems.

Separate from the marketing services agreement discussed above, Plaintiff also maintains that the parties entered into a joint venture called "New Dimensions." This stand-alone fundraising program was to allow the sale of products from both Plaintiff and Defendant in a single fundraiser. According to Plaintiff's complaint, the venture lasted from June 2004 to October 31, 2005. Plaintiff maintains that Defendant's vice president, Ryan Jackson, characterized this effort as a joint venture and reaffirmed it on June 25, 2004. Upon Defendant's announcement that it had resolved its delivery issues in July 2005, so the joint venture could move forward, according to Plaintiff. Plaintiff also states that Defendant submitted documents with the terms of the joint venture, although those documents all reflect their status as drafts during an iterative process to explore a joint venture possibility.

Plaintiff's CEO testified in his deposition that discussions about the possible formation of the venture were still ongoing as of October 10, 2005. He also stated that, as of September 2005, he knew that Defendant intended not to move forward with that venture. He added that the parties were considering a pilot program to test the viability of a joint venture, and Defendant identified a

document outlining that pilot program.  Finally, Plaintiff's CEO sent Defendant's fundraising director an e-mail, Diane Wagner, on September 11, 2005, describing the recent discussions between the parties and accepting Defendant's decision not to continue with the possible joint venture.

On February 24, 2006, Plaintiff filed suit against Defendant.  This Court dismissed four of five counts from Plaintiff's first amended complaint without prejudice on September 26, 2006.  In its second amended complaint, Plaintiff raises four claims: (1) breach of contract; (2) misappropriation of trade secrets under the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws §§ 455.1901 *et seq.*; (3) breach of fiduciary duty; and (4) fraud.  Defendant filed a motion for summary judgment under Federal Rule of Civil Procedure 56(c) and further contends that counts II and IV should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Regarding Plaintiff's claim of breach of contract of the marketing services agreement,[1] Plaintiff's CEO acknowledged that Defendant had rendered payment for services performed as of the date of the termination of the contract.  This excludes any damages following from a breach of ¶ 4.3, regarding Defendant's obligation to provide the requisite facilities, equipment, and personnel.  Consequently, Plaintiff can only pursue damages incurred after the termination of the contract.  Yet,

---

[1] Minnesota law governs the marketing services agreement.  "[F]ederal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (citation omitted).  In Michigan, a choice of law provision in a contract will govern, unless the state chosen has no substantial relationship to the transaction or the contract is contrary to public policy.  *See Chrysler Corp. v. Skyline Industrial Services, Inc.*, 528 N.W.2d 698, 703-704 (Mich. 1995) (citing Restatement Second of Conflict of Laws§§ 187-188).  Here, neither party contests that Minnesota law governs, the contract expressly selects Minnesota law, and Defendant is headquartered in Minnesota.  Minnesota law requires that contracts be enforced according to the plain meaning of contract terms.  *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-347 (Minn. 2003) ("If a contract is unambiguous, the contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh.") (citation and internal quotation omitted).

<mark>1:06-cv-10825-TLL-CEB   Doc # 27   Filed 02/23/07   Pg 6 of 9   Pg ID 718</mark>

per the terms of the contract, those damages must (1) not be consequential damages, as required by ¶ 6; (2) not be deliverables, as defined in the contract in ¶ 1.5 (because the parties agreed to assign them to Defendant under ¶ 7.2); and (3) not be confidential information as defined in ¶ 1.6 and provided for in ¶¶ 8.1, 8.2.

Of the damages alleged by Plaintiff, none falls within these parameters. Damages following from the loss of reputation and the loss of future business are subject to the contractual bar to consequential damages. The remaining source of possible damage under the marketing services agreement to Plaintiff is a breach of confidentiality involving materials that were not deliverables. Plaintiff's CEO does insist that "[f]undraising is unique." Yet, even granting that to be the case, this and other broad generalizations do not show the disclosure of information that Defendant should reasonably know was confidential, per the terms of their agreement. "[T]he party opposing the summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (citations and internal quotations omitted). Although Plaintiff alludes to the financial potential and complexity of its industry, Plaintiff has not indicated what information would constitute "confidential information." Without any showing as to this material element of Plaintiff's claim, Defendant is entitled to judgment as a matter of law as to count I.

Regarding Plaintiff's claim of misappropriation of trade secrets, the MUTSA permits recovery of damages for misappropriation of trade secrets. *See* Mich. Comp. Laws § 445.1904. Mich. Comp. Laws § 445.1902(d) defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other

<mark>-6-</mark>

      persons who can obtain economic value from its disclosure or use.
         (ii) Is the subject of efforts that are reasonable under the circumstances to
      maintain its secrecy.

Of necessity, a trade secret must be a secret. *Kubik, Inc. v. Hull*, 224 N.W.2d 80, 87 (Mich. Ct. App. 1974). This does not include readily ascertainable information that competitors or the public could otherwise acquire without undue hardship.

      Under the terms of the marketing services agreement, Plaintiff assigned all the rights and interests in any deliverables to Defendant. What remains, according to Plaintiff, are trade secrets of financial information, marketing strategy, processing technology, and customer relations approaches and information, to the extent not publicly available. Yet nothing in Plaintiff's submissions further specifies the content of these alleged secrets. Despite combing the discovery materials, the Court could only identify the labels of "financial information," "marketing strategy," "processing technology," or "customer relations approaches and information." These mere labels, however, do not demonstrate that Plaintiff had a protectable trade secret. Plaintiff similarly did not explain what information or process would constitute a trade secret. In contrast, Defendant disputes that any of this information is secret – noting the public availability of the forms and marketing materials and the public nature of a marketing strategy and approaches to customer management. Defendant also asserts that Plaintiff has not otherwise identified any trade secret. The Court agrees with Defendant's assessment and concludes that Plaintiff has not presented a jury question regarding whether the information it seeks to protect constitutes a trade secret under Michigan law. Accordingly, Defendant is entitled to judgment as a matter of law as to count II.

      Regarding Plaintiff's claim of a breach of fiduciary duty, no breach of a fiduciary duty can occur without a fiduciary duty. Although Plaintiff need not show the consummation of a written and

executed document to demonstrate the existence of a fiduciary duty, the only basis on which Plaintiff here asserts a fiduciary duty is the alleged joint venture, "New Dimensions." A joint venture "contemplates an enterprise jointly undertaken; [requires] an association of such joint undertakers to carry out a single project for profit; . . . and [rests on] a community of interest as well as some control over the subject matter or property right of contract." *Reed & Noyce, Inc. v. Municipal Contractors, Inc.*, 308 N.W.2d 445, 446 (Mich. Ct. App. 1981) (citations and internal quotations omitted).

Although the parties' evidence reflects ongoing discussions from June 2004 to October 2005 of the possibility of a joint venture, all the documentation and testimony about conversations between the parties demonstrates a tentative, exploratory, and incomplete process. Indeed, Plaintiff was reluctant to proceed as of July 2005, in light of Defendant's poor performance under the existing marketing services agreement. Thus, the parties' intentions did not reach the status of an enforceable contract to participate in a joint venture. Accordingly, Defendant is entitled to judgment as a matter of law as to count III.

Finally, regarding Plaintiff's claim of fraud, Plaintiff concedes that fraudulent misrepresentation requires a statement of either a past or existing fact, although a promise of future action made in bad faith without any intention of performance can also constitute an actionable misrepresentation. *Hi-Way Motor Co. v. International Harvester, Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Here, Plaintiff asserts no statement of past or existing fact, relying only on its assertion that Defendant represented the future fact of interest in a possible joint venture with Plaintiff. Yet the mere assertion that Defendant expressed some interest in going forward with that project and then did not consummate the project does not demonstrate bad faith. Accordingly, Defendant is entitled

to judgment as a matter of law as to count IV.

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [dkt #20] is **GRANTED**. Plaintiff's case is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 23, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 23, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS